# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (NEWARK)

| | |
|---|---|
| JAMES O'KEEFE, JR., | Civil Action No. 2:16-cv-04866-SDW-LDW |
| Plaintiff, | |
| -vs- | |
| FRIEDMAN AND FRIEDMAN, LTD., | |
| Defendant. | |

## BRIEF IN SUPPORT OF DEFENDANT FRIEDMAN AND FRIEDMAN, LTD.'S, OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT.

**MORGAN MELHUISH ABRUTYN**
651 Old Pleasant Avenue, Suite 200
Livingston, New Jersey 07039
Tel:    (973) 994-2500
E-Mail: eabrutyn@morganlawfirm.com
Attorneys for Defendants Friedman and Friedman, Ltd., and proposed Defendants Eugene F. Friedman, and Gail T. Friedman

Elliott Abrutyn, Esq.
     Of Counsel

Elliott Abrutyn, Esq.
Joshua Heines, Esq.
     On the Brief

{01259556 2}

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .......................................................................... 1

II. PROCEDURAL HISTORY AND BACKGROUND ........................................... 2

LEGAL ARGUMENT ........................................................................................ 4

INTRODUCTION ............................................................................................. 4

   A. Standard of Review for a Motion to Amend the Complaint ............................ 4

POINT I .......................................................................................................... 6

   PLAINTIFF'S PROPOSED AMENDED COMPLAINT FAILS
   TO GIVE FRIEDMAN FAIR NOTICE OF THE CLAIM AND THE
   GROUNDS UPON WHICH THEY REST ....................................................... 6

POINT II ......................................................................................................... 9

   PLAINTIFF'S PROPOSED AMENDED COMPLAINT IS
   PROCEDURALLY DEFICIENT AND MUST BE DENIED ................................ 9

POINT III ........................................................................................................ 9

   PLAINTIFF LACKS STANDING TO BRING ANY CLAIMS
   AGAINST FRIEDMAN .................................................................................. 9

      A. Pursuant To The Full Faith And Credit Claus,
         Plaintiff Has No Standing .......................................................... 12

      B. Plaintiff Is Barred From Seeking Damages on
         Behalf of Demodulation Or Its Shareholders .......................................... 15

POINT IV ........................................................................................................ 16

   PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE
   AND MUST BE DENIED ............................................................................... 16

      A. The Court Lacks Personal Jurisdiction Over Friedman
         Because There Are A Lack Of Sufficient Contacts To Hold
         Them In New Jersey .................................................................. 17

B.  Plaintiff's Claims Are Precluded Because They Have
Already Been Adjudicated In Illinois State Court ...................................... 21

C.  Plaintiff's RICO Claims Are Baseless, Deeply Offensive,
And Must Be Rejected Because They Can Never Survive
The Heightened Scrutiny Applied To All RICO Actions ............................ 24

1.  Plaintiff's proposed amendment is futile because he
has failed to plead a plausible claim that Friedman violated
the Federal RICO statute ................................................................... 26

a. Plaintiff's proposed Amended Complaint fails to
identify any criminal "Enterprise" Friedman was involved in .. 26

1.  There is no relationship between Friedman
and any other individual or entity to establish
a RICO Enterprise ................................................................ 29

2.  Plaintiff has failed to plead a cognizable
shared purpose ..................................................................... 29

3.  Plaintiff cannot prove longevity of a criminal
Enterprise because no such Enterprise exists ................. 30

b.  Plaintiff's proposed Amended Complaint fails
to plead any predicate acts of racketeering activity ............... 30

c.  Plaintiff has not suffered any actionable harm
and lacks standing to bring a RICO claim .................................. 31

D.  Plaintiff Has Failed To Adequately Plead A
Plausible Claim For Which Satisfies The Heightened
Scrutiny Required Under A Claim For Fraud ............................................. 33

E.  Plaintiff's Breach Of Contract Claim Is Subsumed
By The Legal Malpractice Allegation ........................................................... 34

F.  Plaintiff Is Not Legally Entitled To Emotional
Distress Damages In A Legal Malpractice Matter ..................................... 35

G.  Plaintiff Fails To Identify Any Defamatory Conduct
Taken By Friedman ................................................................................. 37

CONCLUSION ............................................................................................... 38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A.V. Imps., Inc. v. Col de Fratta, S.p.A.,
  171 F. Supp. 2d 369 (D.N.J. 2001).............................................................................. 17

Adamo v. Jones,
  2016 U.S.Dist. LEXIS 10698 (D.N.J. January 29, 2016)............................................... 33

Allen v. Wright,
  468 U.S. 737 (1984) ............................................................................................ 10, 11

Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll.,
  77 F.3d 364 (11th Cir. 1996).................................................................................... 9

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ......................................................................................... 5, 6, 31

Beck v. Prupis,
  529 U.S. 494 (2000) ................................................................................................ 24

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ................................................................................ 5, 6, 7, 26, 31

In re Brokerage Antitrust Litig.,
  618 F.3d 300 (3d Cir. 2010)......................................................................... 27, 28, 30

Burger King Corp. v. Rudzewicz,
  471 U.S. 462 (1985) ...................................................................................... 18, 19, 20

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997)..................................................................................... 4

Cedric Kushner Promotions, Ltd. v. King,
  533 U.S. 158 (2001) ............................................................................................... 27

Couri v. Gardner,
    173 N.J. 328 (2002) ................................................................................................. 34

Decker v. Circus Circus Hotel,
    49 F. Supp. 2d 743 (D.N.J. 1999)............................................................................. 17

District of Columbia Court of Appeals v. Feldman,
    460 U.S. 462, 75 L. Ed. 2d 206 (1983)...................................................................... 14

Dougherty v. Snyder,
    621 F.App'x 715 (3d Cir. 2015)................................................................................. 15

Elsevier Inc. v. W.H.P.R., Inc.,
    692 F.Supp. 2d 297 (S.D.N.Y. 2010)........................................................................ 28

Facio v. Jones,
    929 F.2d 541 (10th Cir. 1991) ................................................................................. 14

Federated Dep't Stores, Inc. v. Moitie,
    452 U.S. 394 (1981) ................................................................................................. 24

Feinstein v. Resolution Trust Corp.,
    942 F.2d 34, 42 (1st Cir. 1991)................................................................................ 31

Figuerora Ruiz v. Alegria,
    896 F.2d 645 (1st Cir. 1990)..................................................................................... 25

Foman v. Davis,
    371 U.S. 178 (1962) ................................................................................................... 4

Gautam v. De Luca,
    215 N.J. Super. 388 (App. Div. 1987)............................................................. 35, 36, 37

Genty v. Resolution Trust Corp.,
    937 F.2d 899 (3d Cir. 1991)...................................................................................... 25

Harrison Beverage Co. v. Dribeck Imps., Inc.,
    133 F.R.D. 463 (D.N.J. 1990)................................................................................ 4, 16

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984) ................................................................................................. 18

Holloway v. Clackamas River Water,
  2014 U.S. Dist. LEXIS 170616 (D. Or. Dec. 9, 2014)................................................. 32

Holmes v. Sec. Investor Prot. Corp.,
  503 U.S. 258 (1992) ..................................................................................... 32

Hous. Auth. for La Salle Cty. v. YMCA of Ottawa,
  78 Ill. Dec. 125 (1984)................................................................................... 13

International Shoe Co. v. Washington,
  326 U.S. 310 (1945) ............................................................................... 18, 20

Jasin v. Michael, Best & Friedrich, LLP,
  409 Fed.Appx. 575 (3d Cir. 2011) ..................................................................... 22

Kirk v. Heppt,
  423 F.Supp. 2d 147 (S.D.N.Y. 2006).................................................................. 25

Kremer v. Chem. Constr. Corp.,
  456 U.S. 461 (1982) ..................................................................................... 23

Levinson v. D'Alfonso and Stein. P.C.,
  320 N.J. Super. 312 (App. Div. 1999) ................................................................ 34

Lubrizol Corp. v. Exxon Corp.,
  929 F.2d 960 (3d Cir.1991).............................................................................. 22

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) ............................................................................... 10, 11

In re McMillan,
  579 F.2d 289 (3d Cir. 1978)............................................................................. 13

Meindl v. Genesys Pac. Techs, Inc. (In re Genesys Data Techs.),
  204 F.3d 124 (4th Cir. 2000)............................................................................ 13

Miranda v. Ponce Federal Bank,
  948 F.2d 41 (1st Cir. 1991) ............................................................................. 25

In re Mullarkey,
  536 F.3d 215 (3d Cir. 2008)............................................................................. 21

N.J.Inc. v. Northwestern Bell Telephone Co.,
    492 U.S. 229 (1989) ............................................................................... 31

Nat'l Union Fire Ins. Co. v. DiMucci,
    393 Ill. Dec. 495 (App. Ct. 2015) ............................................... 13

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008).......................................................... 6

Purmal v. Robert N. Wadington and Associates,
    820 N.E.2d 86 (2004) ................................................................. 22

Rogers v. People ex rel. Dep't of Pub. Aid (In re Rogers),
    232 Ill. Dec. 263 (App. Ct. 1998) ............................................... 14

Saffer v. Willoughby,
    143 N.J. 256 (1996) ................................................................... 22

Santiago v. Warminster Twp.,
    629 F.3d 121 (3d Cir. 2010)........................................................ 26

Sedima, S.P.R.L. v. Imrex Co.,
    473 U.S. 479 (1985) ....................................................... 26, 30, 32

Simbraw, Inc. v. United States,
    367 F.3d 373 (3d Cir. 1966)........................................................ 15

State of Tenn. v. Sur. Bank, N.A.,
    84 F. Supp. 2d 803 (N.D. Tex. 1998)........................................... 13

Thomas v. Baca,
    308 Fed. Appx. 87 (9th Cir. 2009)............................................... 32

Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,
    75 F.3d 147 (3dCir. 1996)........................................................... 18

Walter v. Palisades Collection, LLC,
    480 F. Supp. 2d 797 (E.D. Pa. 2007) ........................................... 32

Warth v. Seldin,
    422 U.S. 490 (1975) ................................................................... 10

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980) ....................................................................................... 18

**Statutes**

735 I.L.C.S. 5/13-201.As .................................................................................... 37

18 U.S.C. §1961(1), (5) ....................................................................................... 30

18 U.S.C. §1961(3) .............................................................................................. 27

18 U.S.C. §1961(4) .............................................................................................. 27

18 U.S.C. §1964(c) ......................................................................................... 24, 32

28 U.S.C. §1654 ................................................................................................... 15

28 U.S.C. § 1257 ................................................................................................. 14

28 U.S.C. § 1738 ............................................................................................ 13, 23

N.J.S.A. 2A:14-3 .................................................................................................. 37

N.J.S.A. 2C:21-22 ................................................................................................ 15

**Other Authorities**

Fed. R. Civ. P. 4(e) .............................................................................................. 17

Fed. R. Civ. P. 8 .................................................................................................... 6

Fed. R. Civ. P. 9(b) .............................................................................................. 33

Fed. R. Civ. P. 10(b) ............................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 4, 5

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 4

U.S. Const. art. III, §2 ......................................................................................... 10

U.S. Const. 14th Amendment ............................................................................ 17

U.S.Const. art. IV, §1 ......................................................................................... 12

## I.   PRELIMINARY STATEMENT

Friedman & Friedman, Ltd., Eugene Friedman, Esq., and Gail Friedman, Esq. (hereinafter "Friedman" ) file this Brief in opposition to Plaintiff's Motion for Leave to File an Amended Complaint.  The Court should deny Plaintiff's Motion to Amend, which seeks to add new parties and claims that Friedman violated the Racketeer Influenced and Corrupt Organizations Act, obstructed justice, breached a retainer agreement, committed fraud, intentionally inflicted emotional distress, and engaged in defamatory conduct.  Plaintiff, James O'Keefe, brings these claims on his own behalf as the entity of which he is President, Demodulation, is not a party to this litigation.

In late July 2015, Eugene Friedman contacted Plaintiff regarding representation of Demodulation in a patent infringement case.[1]  Thereafter, Plaintiff executed a Retainer Agreement, drafted by Keith McKenna, Esq., general counsel for Demodulation, with Defendants.[2]  Pursuant to the Retainer Agreement, Plaintiff would be held personally liable for Friedman's legal fees.[3]  After Plaintiff lost confidence in Friedman's capacity to perform the legal task they were retained

---

[1] See proposed Amended Complaint attached to the Certification of Joshua Heines, Esq. ("Heines Cert.") as Exhibit A, p. 7; ; see also 2:16-cv-04866-SDW-LDW, Docket 25-2.

[2] See Heines Cert., Ex. A, p. 9.

[3] Id.

for, but before the Markman Brief was due, Plaintiff discharged Friedman for non-performance under the Retainer Agreement.[4]

Friedman billed Demodulation $276,250.00 for 552.5 hours of work at $500.00 per hour.[5] On March 15, 2016, Friedman filed a Complaint in the Circuit Court of Cook County, Illinois against Plaintiff and Demodulation for failure to pay the legal fees owed.[6] The Illinois Court then entered a judgment against Plaintiff and Demodulation for $269,441.25.[7] Friedman then allegedly asserted a lien against Plaintiff, personally, in that same amount as he was personally liable pursuant to the Retainer Agreement.[8]

The facts and claims contained in Plaintiff's proposed Amended Complaint are futile, meritless, and inappropriate. Therefore, Defendants respectfully request that this Court deny Plaintiff's Motion to Amend the Complaint which, amongst other claims, seeks to add RICO violations which is the litigation equivalent of a thermonuclear device.

## II.   PROCEDURAL HISTORY AND BACKGROUND

On July 13, 2016, Keith McKenna, Esq. of The McKenna Law Firm, LLC filed a lawsuit against Friedman & Friedman, Ltd. in the Superior Court of New Jersey, Law

---

[4] See Heines Cert., Ex. A, p. 10.

[5] See Heines Cert., Ex. A, p. 1.

[6] Id.

[7] See Heines Cert., Ex. A, p. 2.

[8] Id.

Division, Bergen County on behalf of Plaintiff and Demodulation, Inc.  In the Complaint, Plaintiff and Demodulation sought a declaration of reasonable legal fees owed to Friedman for Friedman's legal work on Demodulation's patent litigation. Additionally, Plaintiff and Demodulation claimed that Friedman committed legal malpractice related to its representation of Demodulation.  Finally, they sought to have Friedman return documents in its possession.

On August 10, 2016, Friedman filed a Notice of Removal to the Federal Court. After the matter was removed to the United States District Court for the District of New Jersey, Friedman filed a Motion to Dismiss Plaintiffs' Complaint in lieu of filing an Answer on September 6, 2016.

The Court entered an Order allowing McKenna to withdraw as counsel to Plaintiff and Demodulation on October 13, 2016.  Plaintiff had until November 18, 2016 to enter his appearance *pro se* or have substitute counsel enter an appearance on his behalf.  Further, the Order specifically states that Demodulation must be represented by counsel or else would face dismissal of its claims.  Plaintiff and Demodulation failed to comply with the Court Order and, in response, the Court directed them to appear for an in-person conference on January 19, 2017. Demodulation elected not to retain counsel and on January 20, 2017 Plaintiff asserted that as President, CEO, and majority shareholder of Demodulation he had the authority to represent Demodulation's shareholders.

On March 6, 2017, Plaintiff, individually, filed the instant Motion to Amend the Complaint.   The proposed Amended Complaint is baseless and patently offensive.

## LEGAL ARGUMENT

## INTRODUCTION

### A. Standard of Review for a Motion to Amend the Complaint

Courts give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); see also Foman v. Davis, 371 U.S. 178, 182 (1962). The decision to grant leave to amend rests within the discretion of the court. Foman, 371 U.S. at 182. Pursuant to Foman, leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; or (4) futility of amendment.   Id.   An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face."   Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990) (citations and quotations omitted).   In determining whether an amendment is "insufficient on its face," the Court employs the Fed. R. Civ. P. 12(b)(6) motion to dismiss standard.   In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). The question before the Court, therefore, is not whether the movant will ultimately prevail. Rather, it is whether the plaintiff is able to articulate "enough

facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Under Fed. R. Civ. P. 12(b)(6), the standard to determine whether a motion to dismiss should be granted is whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plausible claim is one which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 672 (citations omitted). Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." Id. at 678. Rather, the "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 562 (2007).

To survive dismissal under Rule 12(b)(6), a plaintiff must provide "direct or inferential allegations respecting all the material elements" of the claims. Twombly, 550 U.S. at 562. Specifically, a complaint must contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiffs' cause of action. Id. at 556. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555. Allegations that are merely "consistent with" unlawful conduct are insufficient to state a plausible claim where "more likely explanations" of lawful conduct exist. Iqbal, 556 U.S. at 678, 681.

A review of Plaintiff's proposed Amended Complaint shows that the proposed amendment must be denied as a matter of law because the factual allegations asserted against Friedman are nothing "more than an unadorned, the defendant-unlawfully-harmed-me accusation[s]."   Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Those accusations are rife with rampant speculation which will never be proven.  Twombly, 550 U.S. at 562.

**POINT I**

**PLAINTIFF'S PROPOSED AMENDED COMPLAINT FAILS
TO GIVE FRIEDMAN FAIR NOTICE OF THE CLAIM AND
THE GROUNDS UPON WHICH THEY REST**

Although lengthy, Plaintiff's wildly speculative allegations contained in the proposed Amended Complaint fail to satisfy the Fed. R. Civ. P. 8 requirements. Plaintiff is required to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.  The Rules require Plaintiff to provide "more than an unadorned, the-defendant-unlawfully harmed me accusation."   Ashcroft v. Iqbal, 556 U.S. 662(2009).   It is Plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   Twombly, 550 U.S. at 555. In addition, the "[f]actual allegations must be enough to raise a right to relief above the speculative level. . . ." Id.; see also Phillips

v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the Twombly pleading standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s].") (quoting Twombly, 550 U.S. at 556).

Plaintiff's proposed Amended Complaint, which largely does not even target Friedman (despite being the only named Defendants), does not contain facts accusing Friedman of any wrongdoing, but contains wild machinations requiring mental gymnastics and leaps of faith to link Friedman with any civil transgression. The actual facts contained in the proposed Amended Complaint fail to put the proposed Defendants on notice of any of the new legal claims therein.

The proposed Amended Complaint alleges the following. In late July 2015 Eugene Friedman contacted Plaintiff regarding representation of Demodulation in a patent infringement case.[9]  Thereafter, Plaintiff executed a Retainer Agreement, drafted by Keith McKenna, Esq., general counsel for Demodulation, with Defendants.[10]  Pursuant to the Retainer Agreement, Plaintiff would be held personally liable for the proposed Defendants' legal fees.[11]  After Plaintiff lost confidence in Friedman's capacity to perform the legal task they were retained for,

---

[9] See Heines Cert., Ex. A, p. 7.
[10] Id., p. 9.
[11] Id.

but before the Markman Brief was due, Plaintiff discharged the proposed Defendants for non-performance under the Retainer Agreement.[12]

Friedman billed Demodulation $276,250.00 for 552.5 hours of work at $500.00 per hour.[13]  On March 15, 2016, Friedman filed a Complaint in the Circuit Court of Cook County, Illinois against Plaintiff and Demodulation for failure to pay the legal fees owed.[14]  The Illinois Court then entered a judgment against Plaintiff and Demodulation for $269,441.25.[15]  Friedman then asserted a lien against Plaintiff, personally, in that same amount as he was personally liable pursuant to the Retainer Agreement.[16]

Based upon these facts as alleged in the proposed Amended Complaint, it is impossible for Friedman to discern the basis of the claims that they: 1) violated the Racketeer Influenced and Corrupt Organization Act; 2) obstructed justice; 3) breached the Retainer Agreement; 4) acted with fraud; 5) committed legal malpractice; 6) intentionally inflicted emotional distress; or, 7) defamed Plaintiff. Contrary to Plaintiff's obligation to provide the grounds of his entitlement to relief requiring more than labels and conclusions, Plaintiff has merely alleged nothing "more than an unadorned, the-defendant-unlawfully harmed me accusation."  As

---

[12] See Heines Cert., Ex. A, p. 10.

[13] Id., p. 1.

[14] Id.

[15] Id., p. 2.

[16] Id., p. 2.

the proposed Amended Complaint fails to put Friedman on notice of the claims, the Motion to Amend the Complaint must be denied.

## POINT II

### PLAINTIFF'S PROPOSED AMENDED COMPLAINT IS PROCEDURALLY DEFICIENT AND MUST BE DENIED

Plaintiff fails to number his claims in numbered paragraphs rendering the proposed Amended Complaint impossible to respond to.  The Rules requires that a party "states its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  Rule 10(b) is "designed to achieve clarity and simplicity in the pleadings." Anderson v. Dist. Bd. of Trs. Of Cent. Fla. Cmty. Coll., 77 F.3d 364 (11th Cir. 1996).

Plaintiff's proposed Amended Complaint is nothing more than a narrative story concocted from his imagination.  Contrary to the Federal Rules of Civil Procedure, the proposal does not include numbered paragraphs rendering it impossible to adequately respond to in any fashion.  Therefore, Plaintiff's Motion to Amend the Complaint must be denied.

## POINT III

### PLAINTIFF LACKS STANDING TO BRING ANY CLAIMS AGAINST FRIEDMAN

There is no case-or-controversy between Plaintiff and Friedman; therefore, the Motion to Amend the Complaint must be denied. Article III of the Constitution

limits the scope of the Federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, §2. The courts have developed several justiciability doctrines to enforce the case-or-controversy requirement, and "perhaps the most important of these doctrines" is the requirement that "a litigant have 'standing' to invoke the power of a federal court." Allen v. Wright, 468 U.S. 737, 750 (1984). "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 501 (1975).

The plaintiff bears the burden of meeting the "irreducible constitutional minimum" of Article III standing by establishing three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)

To satisfy the injury in fact requirement, the alleged injury must be "particularized," in that it "must affect the plaintiff in a personal and individual way."

Id. at 560, n.1. The injury in fact test requires the plaintiff seeking redress being amongst the injured. Id. at 563. Furthermore, the "standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Allen, 468 U.S. at 752.

Here, Plaintiff cannot prove and, in fact, does not even allege injury in fact to vault the federal standing requirements. There is no allegation contained anywhere in Plaintiff's Complaint which would allow an objective reader to surmise that Friedman caused Plaintiff any injury whatsoever.

The Retainer Agreement[17] between Plaintiff and Demodulation, Inc. and Friedman, which is attached to Plaintiff's proposed Amended Complaint, clearly states, in no uncertain terms, that Friedman was to represent Demodulation at the Markman hearing and trial in the action then pending in the United States Court of Federal Claims captioned Demodulation, Inc. v. United States in patent infringement litigation. No legal work was to be performed directly for Plaintiff. Plaintiff, in his individual capacity as President of Demodulation, was responsible for legal fees, costs, and expenses. The Illinois State Court has already determined that the legal fees, costs, and expenses Friedman invoiced in that litigation were fair

---

[17] See Heines Cert., Ex. A.

and reasonable. A judgment was entered in favor of Friedman. This Court must give Illinois' judgment full faith and credit. As such, Plaintiff cannot prove individual damages and has no standing.

## A. Pursuant To The Full Faith And Credit Clause, Plaintiff Has No Standing

The Circuit Court of Cook County, Illinois has already entered a judgment in favor of Friedman in the amount of $269,441.25 related to legal work performed for Demodulation pursuant to the Retainer Agreement. This Court, respectfully, may not assail the sound judgment of the Illinois state court pursuant to the Full Faith and Credit Clause.

Article 4 section 1 of the United States Constitution, the Full Faith and Credit Clause states:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S.C.S. Const. Art. IV, § 1

Therefore, and as a result of the power granted by the clause, Congress enacted the following law:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage

> in the courts of such State, Territory or Possession from
> which they are taken.

28 U.S.C. § 1738; State of Tenn. v. Sur. Bank, N.A., 84 F. Supp. 2d 803, 807-09 (N.D.
Tex. 1998).

"[T]he full faith and credit statute requires a federal court to apply state *res
judicata* law in determining the preclusive effect of a state court judgment." Meindl
v. Genesys Pac. Techs, Inc. (In re Genesys Data Techs.), 204 F.3d 124, 129 (4th Cir.
2000).   Here, Plaintiff has a Default Judgment entered against him in the amount of
$269,847.29. Therefore, Illinois law applies in determining preclusive effect.

In Illinois a default judgment is "entitled to the same preclusive effect under
the doctrine of *res judicata* as any other judgment." Hous. Auth. for La Salle Cty. v.
YMCA of Ottawa, 78 Ill. Dec. 125 (1984). Moreover, "default judgments are always
*res judicata* on the ultimate claim or demand presented in the complaint."[18] Id.   In
addition, "[w]here the party against whom collateral estoppel is asserted has had a
full and fair opportunity to contest an issue that was necessarily determined in the
original proceeding, the defensive use of collateral estoppel may be applied to bar
relitigation of the issue even where a default judgment has been entered provided

---

[18] "The Third Circuit recognizes default judgments as final judgments with *res
judicata* effect. See In re McMillan,  579 F.2d 289, 293 (3d Cir. 1978) (holding that a
default judgment has *res judicata* effect and is conclusive in a subsequent suit
based on the same cause of action between the same parties or their privies)." Nat'l
Union Fire Ins. Co. v. DiMucci, 393 Ill. Dec. 495, 34 N.E.3d 1023, P34 (App. Ct. 2015).

no injustice results from the application of the doctrine." Rogers v. People ex rel. Dep't of Pub. Aid (In re Rogers), 232 Ill. Dec. 263 (App. Ct. 1998).

In addition, "the Supreme Court made it entirely clear that federal district courts and federal courts of appeals lack jurisdiction to review or reverse a state court judgment. Any such federal review has to be addressed directly to the United States Supreme Court from the state's highest court pursuant to 28 U.S.C. § 1257." Facio v. Jones, 929 F.2d 541, 543 (10th Cir. 1991)(citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 75 L. Ed. 2d 206 (1983)).

Plaintiff cannot assert that he was caused any damage related to Friedman's representation or point to Friedman's legal bills as a component of any damage. This Court should give preclusive effect to the judgment rendered by Illinois in awarding Friedman $269,441.25 Entry of this judgment is proof not only of the amount, but of the reasonableness and actuality of the legal work performed. As the only individual damages Plaintiff could have suffered were related to his individual responsibility for payment of those fees, he is precluded from seeking any recompense based upon the Illinois judgment which should be given full faith and credit. Moreover, the Illinois judgment cannot be used as the foundation for any claims against Friedman.

**B. Plaintiff Is Barred From Seeking Damages On Behalf Of Demodulation Or It's Shareholders**

Plaintiff has filed this Motion to Amend on his own behalf as a *pro se* litigant as he is not an attorney.  While Plaintiff purports to speak on behalf of all Demodulation stockholders in his capacity as a *pro se* litigant[19], he is not permitted to do so.

It is beyond dispute that "parties may plead and conduct **their own cases** personally . . . ." 28 U.S.C. 1654 (emphasis added).   However, Plaintiff in pleading a case on behalf of Demodulation or its shareholders would not be conducting his own case personally.   The law is well settled that corporate entities cannot represent themselves *pro se*.  See Dougherty v. Snyder, 621 F.App'x 715, 717 (3d Cir. 2015); see also Simbraw, Inc. v. United States, 367 F.3d 373 (3d Cir. 1966). Therefore, Plaintiff's attempt to represent Demodulation or its shareholders constitutes the unauthorized practice of law which is a crime.   N.J.S.A. 2C:21-22. Based on the foregoing, Plaintiff may not represent Demodulation or its shareholders.

As Plaintiff cannot represent Demodulation or its shareholders and he has not personally suffered any damages, Plaintiff lacks standing to bring claims against Friedman.  Thus, the Motion to Amend should be denied.

---

[19]See Heines Cert., Ex. A, p. 5; see also 2:16-cv-04866-SDW-LDW, Docket 20.

## POINT IV

## PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE AND MUST BE DENIED

Plaintiff's Motion to Amend the Complaint must be denied because the allegations contained in the proposed Amended Complaint are futile.    An amendment will be considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." Harrison Beverage, 133 F.R.D. at 468 (D.N.J. 1990).  First, the proposed amendments are futile because the Court lacks personal jurisdiction over the Defendants due to a lack of contacts within New Jersey.  Second, Plaintiff is precluded from bringing the claims addressed in the proposed Amended Complaint by virtue of the doctrine of *res judicata* as the Circuit Court of Cook County, Illinois has already rendered a final judgment as to the reasonableness and necessity of Defendant's fees.

Third, Plaintiff has failed to adequately plead a plausible claim that Friedman violated the Federal RICO statute.  Beyond that, Plaintiff has failed to identify any criminal enterprise that Friedman was involved in, any actual relationship between Friedman and any other individual or entity allegedly in the Enterprise, a shared purpose of the Enterprise, or any predicate acts of racketeering activity.  Fourth, Plaintiff's rampant and wildly speculative allegations contained in the proposed Amended Complaint fail to meet the heightened scrutiny required under a claim for fraud which is Count 4 of the proposed Amended Complaint.

Fifth, Plaintiff's breach of contract claim under Count 3 would be subsumed by the legal malpractice claim upon which the initial Complaint was founded. Sixth, Plaintiff is not entitled to emotional distress damages in legal malpractice cases. Seventh, while Plaintiff asserts a claim for defamation at Count 7 nowhere in the unwieldy proposed Amended Complaint does Plaintiff actual assert any defamatory conduct or statements on Friedman's part. For these reasons, Plaintiff's proposed amendments are futile and, therefore, the motion must be denied.

### A. The Court Lacks Personal Jurisdiction Over Friedman Because There Are A Lack Of Sufficient Contacts To Hold Them In New Jersey

Fed. R. Civ. P. 4(e) permits a federal court sitting in diversity to assert personal jurisdiction over a non-resident to the extent authorized by the state law in which that court sits. A.V. Imps., Inc. v. Col de Fratta, S.p.A., 171 F. Supp. 2d 369, 370 (D.N.J. 2001). New Jersey's long-arm statute allows this Court to assert personal jurisdiction over a non-resident defendant to the full extent authorized by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Decker v. Circus Circus Hotel, 49 F. Supp. 2d 743, 745-46 (D.N.J. 1999) (citing Carteret Sav. Bank, 954 F.2d at 145).

The requirements of the Due Process Clause can only be satisfied by a showing that (1) the defendant has certain minimum contacts with the forum, (2) such that the maintenance of the suit does not offend traditional notions of fair

play and substantial justice. Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150-51 (3dCir. 1996) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

A court may exercise either specific or general personal jurisdiction. Specific jurisdiction is obtained when the controversy is related to or "arises out of" a defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). If the suit does not arise out of or relate to the defendant's contacts with the forum state, the Court may exercise general jurisdiction if such contacts with the forum constitute "continuous and systematic general business contacts." Id. at 415-16.

The "constitutional touchstone" of personal jurisdiction is whether minimum contacts exist whereby the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hauled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Here, there is no evidence that Defendants had continuous and systematic contacts with New Jersey sufficient to support a finding of general jurisdiction. Defendants are not incorporated in New Jersey, do not do any business or advertise

in New Jersey, have never been admitted to the bar of New Jersey, and have never been admitted to practice *pro hac vice* in New Jersey.[20]

Importantly, the minimum contacts inquiry is not satisfied by the unilateral activities of the plaintiff and instead requires a "purposeful availment" by the defendant of the New Jersey forum such that the defendant should reasonably anticipate being hauled into court in New Jersey, which is necessarily a fact-sensitive analysis. Burger King Corp. v. Rudzewicz, 471 U.S. at 475 (1985).

Plaintiff initiated and reached out to the Defendants in Illinois for the purpose of representing Plaintiff's interests in the United States Court of Federal Claims located in Washington, D.C.[21] The solitary meeting between Plaintiff and Defendants relating to that representation occurred at Friedman's office in Illinois. Id. All of the services performed by Defendants for Plaintiff took place in Illinois. Friedman never traveled to New Jersey as part of their representation of Plaintiff. Id. Defendants also never sought admission to New Jersey *pro hac vice*. Id. The Retainer Agreement between Plaintiff and Defendants was negotiated, discussed, and entered into at Defendants' office in Illinois. Id.

Accordingly, Defendants lack sufficient minimum contacts within New Jersey to be subject to this Court's personal jurisdiction. Furthermore, the exercise of

---

[20] See Certification of Eugene F. Friedman, attached to the Heines Cert. as Exhibit B.
[21] See Heines Cert., Ex. B.

personal jurisdiction by this Court over Friedman as non-residentswould "offend traditional notions of fair play and substantial justice." International Shoe Co., supra, 326 U.S. 316 (1945).

In making this determination, this Court must consider 1) the burden on the defendant; 2) New Jersey's interest in adjudicating the dispute; 3) Plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and, 5) the shared interest of the several states in furthering fundamental substantive social policies. See Burger King Corp., supra, 471 U.S. 462 (1985).

The burden on Defendants is substantial.  They do not have and have never maintained a presence in New Jersey, practiced law in New Jersey, or otherwise conducted business in New Jersey. Furthermore, New Jersey's interest in adjudicating this dispute is substantially less than Illinois's interest given: 1) the fact that an Illinois court has already rendered a judgment as to all of Plaintiff's allegations regarding Defendant's fees; 2) Defendants never actually performed any work in New Jersey and were never in New Jersey on this matter or for any reason during his representation of Demodulation; and 3) Plaintiff's purported injury occurred in Washington D.C. and in failing to pay money to Defendants in Illinois.

The final two factors (the interstate judicial system's interest and the shared interest of the states in furthering substantive social policies and in promoting

efficient resolutions of disputes) would not support a finding of personal jurisdiction over the proposed Defendants, as substantive social policy and the interest of efficient resolutions of disputes would have these matters resolved in Illinois (not in New Jersey).

Accordingly, Friedman respectfully requests the Court enter a finding that it lacks personal jurisdiction over Defendants rendering the proposed Amended Complaint futile. Thus, the Motion to Amend should be denied.

## B. Plaintiff's Claims Are Precluded Because They Have Already Been Adjudicated In Illinois State Court

Plaintiff's Motion to Amend should be denied because the proposed Amended Complaint is barred by the doctrine of *res judicata*. "Both New Jersey and federal law apply *res judicata* or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." (internal citations omitted) In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). Importantly, *res judicata* "bars not only claims that were brought in a previous action, but also claims that could have been brought." Id.

In this matter, it is undisputed that the Circuit Court of Cook County in Illinois presided over a hearing and Prove-Up on damages on July 6, 2016, and thereafter rendered a final judgment on the merits as to the reasonableness and necessity of

Defendants' fees.[22] It is further undisputed that the Fee Case involved the same parties as the case presently before this Court. Last, a comparison of the Fee Case Complaint and the proposed Amended Complaint filed by Plaintiff in this case demonstrates that the claims (the representation provided to Plaintiff and the reasonableness, necessity and fairness of Defendants' fees) are one and the same, because of the "essential similarity of the underlying events giving rise to the various legal claims." Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir.1991).

Indeed, under both New Jersey and Illinois law, Plaintiff's remaining allegations must have been brought as a counterclaim and/or affirmative defense to Defendants' claim for fees in the Fee Case. See, e.g., Saffer v. Willoughby, 143 N.J. 256, 272 (1996) ("Ordinarily, an attorney may not collect attorney fees for service negligently performed."); Jasin v. Michael, Best & Friedrich, LLP, 409 Fed.Appx. 575 (3d Cir. 2011); Purmal v. Robert N. Wadington and Associates, 820 N.E.2d 86 (2004) (finding that a legal malpractice claim filed after the resolution of a fee claim was barred by the doctrine of *res judicata*).

In Purmal, the Illinois Appellate Court noted:

> Lastly, we must determine whether there is an identity of the cause of action between the decision in the fee petition litigation and Purmal's present complaint alleging legal malpractice. Illinois courts adhere to the

---

[22] See Circuit Court of Cook County Order, dated July 6, 2016, attached as Exhibit C to the Heines Cert.

> 'transactional' test to determine whether causes of action are the same for purposes of res judicata. Under this test, 'separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.' As long as the claims arise from the same transaction, they will be considered to be the same cause of action, even if there is not a substantial overlap of evidence between the claims.
>
> Contained in Plaintiffs' Complaint, paragraphs (c) through (g) of count I, all allegations in count II, paragraphs 21(a) through (d) in count V and all of count VI involve the same group of operative facts that gave rise to the earlier case awarding attorney fees to defendants, and thus, involve the same cause of action. Id. at 95-96. (citations omitted).

To qualify for full faith and credit under 28 U.S.C. § 1738, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481 (1982).

Plaintiff was personally served with the Complaint in the Fee Case. He was given notice of the Prove-Up Hearing. The Prove-Up Hearing was presided over by the Court. Plaintiff elected to not participate in the Prove-Up Hearing where he would have had an opportunity to make an oral presentation, cross-examine witnesses, present evidence, and be represented by counsel. The judgment rendered by the Circuit Court of Cook County, Illinois in the Fee Case is entitled to full faith and credit. Id.

Furthermore, it is well established that *res judicata* bars not only claims that were raised in a previous proceeding but also claims that could have been raised. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Here it is clear that the Plaintiff failed to adequately plead, and in fact never plead, their legal malpractice claim as a counterclaim and/or an affirmative defense to Defendants' claims in the Fee Case. As such, a full and final judgment on the merits of that case was decided and therefore, the subsequent legal malpractice claim now alleged should be barred.

Therefore, Plaintiff's claims are barred by the doctrine of *res judicata* and the Motion to Amend should be denied as futile.

## C. Plaintiff's RICO Claims Are Baseless, Deeply Offensive, And Must Be Rejected Because They Can Never Survive The Heightened Scrutiny Applied To All RICO Actions

Plaintiff seeks to set off the litigation equivalent of a thermonuclear device against Friedman without any foundation. The RICO provisions of the Organized Crime Control Act of 1970 were enacted expressly for the purpose of "seeking the eradication of organized crime in the United States." Beck v. Prupis, 529 U.S. 494, 496 (2000). RICO provides for a "civil cause of action 'for any person injured in his business or property by reason of a violation of [RICO]." Id. (quoting 18 U.S.C. §1964(c)).

"[I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." Miranda v. Ponce Federal Bank, 948 F.2d 41, 44 (1st Cir. 1991). "Civil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device." Id. "The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants...courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Figurerora Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990).

Courts "must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing." Kirk v. Heppt, 423 F.Supp. 2d 147, 149 (S.D.N.Y. 2006). "[I]t would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering." Miranda, 948 F.2d at 44. The proliferation of groundless RICO claims "demonstrates how far afield we have wandered from the 'heartland' of Congress' initial intention for RICO actions. Instead of elements of organized crime being on trial...it is the public." Genty v. Resolution Trust Corp., 937 F.2d 899, 913 (3d Cir. 1991).

In order to establish a *prima facie* showing under RICO, a plaintiff must show the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity." <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 <u>U.S.</u> 479, 496 (1985).  "The plaintiff must, of course, allege each of these  to state a claim." <u>Id.</u>

1. **Plaintiff's proposed amendment is futile because he has failed to adequately plead a plausible claim that Friedman violated the Federal RICO statute**

Plaintiff has failed to present "direct or inferential allegations respecting all the material elements" necessary to present a plausible claim that Friedman violated federal RICO statutes.  <u>See</u> <u>Twombly</u>, 550 <u>U.S.</u> at 562.  Based upon a plain reading of Plaintiff's proposed Amended Complaint and based only upon the "well-pleaded factual allegations," which the court should assume are true, Plaintiff fails to even make a rudimentary RICO claim against Friedman.  <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 <u>F.3d</u> 121, 130 (3d Cir. 2010).  Nowhere in Plaintiff's Complaint, does Plaintiff identify (1) any criminal enterprise Friedman was involved in, (2) any predicate acts of racketeering activity that they engaged in, or (3) any conspiracies they sought to advance.

a. <u>Plaintiff's proposed Amended Complaint fails to identify any criminal "Enterprise" Friedman was involved in</u>

Plaintiff fails to plausibly set forth the conduct of any "enterprise" between Friedman and any other entity.   A proper RICO claim must allege "the existence of two separate entities, a 'person' and a distinct 'enterprise,' the affairs of which that

'person' improperly conducts." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).  Under RICO, a "person" is defined to include "any individual or entity capable of holding a legal or beneficial interest in property...."  18 U.S.C. §1961(3).  Under §1962(a), the "person" must have "participated as a principal . . . in the establishment or operation" of an enterprise.   Pursuant to §1962(c), the "person" must be "employed by or associated with" an enterprise. The "enterprise" itself, by contrast, is defined in the statute to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. §1961(4).

While there is little doubt that Defendants constitute a "person" under RICO, the proposed Amended Complaint is absolutely devoid of any allegations establishing an enterprise, let alone an enterprise the affairs of which Friedman improperly conducted.   The amorphous "enterprise" pled in the proposed Amended Complaint is not a legal entity, but an association of legal entities.  Where it is pled that the "enterprise" is not a legal entity, but an association of legal entities, "listing the names of alleged conspirators would not give defendants adequate notice of an alleged conspiracy" is insufficient.  In re Brokerage Antitrust Litig., 618 F.3d 300, 369-70 (3d Cir. 2010).  Plaintiff must "provide more detail in pleading the existence of an association-in-fact enterprise." Id. (citations omitted).

A RICO claim must plead facts plausibly implying the existence of an enterprise with at least the following structural attributes: "a shared purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. It is mandatory at the pleading stage that a plaintiff plausibly suggest the existence of an enterprise structure. In doing so, a plaintiff must "allege something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period . . . regardless of whether there is even a hint of the collaboration necessary to trigger liability." In re Brokerage Antitrust Litig., 618 F.3d at 370 (citing Elsevier Inc. v. W.H.P.R., Inc., 692 F.Supp. 2d 297, 307 (S.D.N.Y. 2010)).

In the proposed Amended Complaint, Plaintiff fails to allege anything more than the proposed Defendants were attorneys who were part of some nebulous enterprise which was part of an operation "running a money laundering scheme to divert 'contingency funds' intended to fund three lawsuits filed on behalf of the plaintiff to other purposes and to facilitate an insurance fraud and bogus billing kickback scheme."[23]. To start, Plaintiff lacks standing to make these allegations because no lawsuits were filed on his behalf, but on behalf of Demodulation. Regardless of standing, Plaintiff's proposed Amended Complaint fails to plead what is necessary to prove a RICO enterprise.

---

[23] See Heines Cert., Ex. A, p. 5.

There are no allegations in the proposed Amended Complaint to establish a shared purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

### 1. There is no relationship between Friedman and any other individual or entity to establish a RICO Enterprise

Plaintiff has not identified a single case Friedman was ever involved in with or against any of the other alleged entities who were part of, or furthered, the Enterprise. Beyond simply stating that Friedman was a member of a larger RICO Enterprise, Plaintiff has not identified one case where Friedman worked with any of the other Defendants as part of the conspiracy. As Plaintiff is required to "allege something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period" and has failed to do so, the Motion to Amend must be denied.

### 2. Plaintiff has failed to plead a cognizable shared purpose

The alleged shared purpose of the Enterprise was to facilitate an insurance fraud and bogus billing kickback scheme. First, Plaintiff fails to identify any insurance fraud scheme in the entirety of his proposed Amended Complaint. Even if such a scheme was identified, the proposal is completely devoid of any facts tying Friedman to it or for what possible purpose. Second, there is no plausible bogus billing kickback scheme. No billing kickback scheme can exist because Friedman's

legal bills to Demodulation have already been adjudged to be both earned and reasonable. Thus, there can be no shared purpose of a criminal Enterprise.

### 3. Plaintiff cannot prove longevity of a criminal Enterprise because no such Enterprise exists

Plaintiff fails to identify any instance where Friedman acted in concert with any other Defendant in any other case other than Demodulation. By failing to identify any other such case, Plaintiff cannot prove the longevity of the alleged criminal Enterprise which is vital and necessary at the pleading stage. Based on this factor alone, Plaintiff cannot prove the longevity pleading requirement.

### b. Plaintiff's proposed Amended Complaint fails to plead any predicate acts of racketeering activity

Plaintiff has failed to plausibly plead that Friedman committed any criminal offenses which would constitute "predicate acts" of "racketeering activity." Amongst other elements, a plaintiff must successfully plead and prove a pattern of racketeering activity. See Sedima, 473 U.S. at 496. A pattern of racketeering activity is established by showing that the defendants engaged in at least two predicate acts within ten years of each other. 18 U.S.C. §1961(1), (5); In re Ins. Brokerage Antitrust Litig., 618 F.3d at 364. An act of "racketeering activity" is defined in RICO to mean 'any act or threat involving' specified state-law crimes, any 'act' indictable

under various specified federal statutes, and certain federal 'offenses.'" N.J.Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 232 (1989).

It is black letter law that in order for the Plaintiff's RICO claims to stand, the Complaint must sufficiently allege that two criminal predicate acts were committed by the RICO participants.  Plaintiff has been unable to set forth any such criminal predicate acts because they simply do not exist.  To be sure, Plaintiff facially attempts to comply with his pleading requirements, by baldly asserting that the Defendants engaged in sixteen crimes.[24]  In doing so, Plaintiff merely lists the alleged crimes without offering a modicum of explanation as to how, when, and where Friedman engaged in the predicate acts.

"It is not enough for a plaintiff to file a RICO action, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 42 (1st Cir. 1991).  There is zero basis in the proposed Amended Complaint to support a claim that the proposed Defendants violated any criminal offense.  Where, as here, Plaintiff tenders "'naked assertions' devoid of any 'factual enhancement,'" Iqbal, 556 U.S. 662 (quoting Twombly, 550 U.S. at 557), their civil RICO claim is patently deficient and the Motion to Amend must be denied as futile.

_____

[24] See Heines Cert., Ex. A, p.5.

### c. Plaintiff has not suffered any actionable harm and lacks standing to bring a RICO claim

Plaintiff lacks standing to bring a RICO claim because he has not suffered any damages. A plaintiff "has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L., 473 U.S. at 496. To have standing under RICO, (1) a plaintiff's "business or property" must have been "injured" (2) "by reason of" the defendant's RICO violation. Walter v. Palisades Collection, LLC, 480 F. Supp. 2d 797, 803–04 (E.D. Pa. 2007) (citing 18 U.S.C. § 1964(c)); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992).

Plaintiff has not suffered an injury to his "business or property." Plaintiff is the President and a shareholder of Demodulation – the entity for which Friedman performed legal work. Demodulation, the only entity which could potentially sue Friedman, is not Plaintiff's "business or property."

Moreover, even if Demodulation was Plaintiff's business or property, a number of courts have ruled that the expenditure of legal fees are not sufficient injury to convey standing to bring a civil RICO claim. The Ninth Circuit "has not recognized the incurment of legal fees as an injury cognizable under RICO." Thomas v. Baca, 308 Fed. Appx. 87, 88 (9th Cir. 2009); see also Holloway v. Clackamas River Water, 2014 U.S. Dist. LEXIS 170616, *21 (D. Or. Dec. 9, 2014)("legal fees expended

to defend against sham lawsuits are not the type of injury to business or property interest which confer standing to bring a civil RICO claim").  Recently, the United States District Court for the District of New Jersey also determined that a plaintiff's incurment of legal fees caused by litigation filed by defendant-attorneys did not constitute an injury which would afford RICO standing.  See Adamo v. Jones, 2016 U.S.Dist. LEXIS 10698, *30 (D.N.J. January 29, 2016)[25].  Furthermore, the harm suffered must stem from the predicate acts underlying the RICO claim.  As set forth above, Plaintiff has wholly failed to establish he has suffered any harm proximately caused by the predicate acts "committed" by the Defendants in this action and, therefore, lacks standing.

### D. Plaintiff Has Failed To Adequately Plead A Plausible Claim Which Satisfies The Heightened Scrutiny Required Under A Claim For Fraud

Plaintiff's skeletal claims of fraud must be dismissed pursuant to Fed. R. Civ. P. 9(b) which imposes a heightened pleading requirement with respect to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The proposed Amended Complaint fails to even hint at a solitary date, time, or place of any alleged fraud.  There isn't a scintilla of evidence in the proposed Amended Complaint of the general content of any misrepresentations.  Plaintiff's proposed

---

[25] A copy of the decision in Adamo v. Jones, 2016 U.S.Dist. LEXIS 10698, *30 (D.N.J. January 29, 2016) is attached to the Heines Cert. as Exhibit D.

Amended Complaint contains nothing more than bald assertions.  Based on the foregoing, the Motion to Amend should be denied as the fraud claims pled are futile.

### E. Plaintiff's Breach Of Contract Claim Is Subsumed By The Legal Malpractice Allegation

Plaintiff cannot succeed on a breach of contract claim against Friedman as such claims are included in a general legal malpractice claim.  Legal malpractice claims are grounded in the substantive law of negligence, and the conduct of attorneys against whom legal malpractice claims are brought is measured by the standard of care applicable to such actions. See <u>Levinson v. D'Alfonso and Stein. P.C.</u>, 320 <u>N.J. Super.</u> 312 (App. Div. 1999). A plaintiff cannot alter the applicable standard of care by calling a malpractice claim something other than what it is.  See <u>Couri v. Gardner</u>, 173 <u>N.J.</u> 328, 340 (2002). "It is not the label placed on the action that is pivotal but the nature of the legal inquiry." <u>Couri</u>, <u>supra</u>, 173 <u>N.J.</u> at 340.  New Jersey courts recognize that claims against attorneys that in substance allege only the breach of the duty of care are legal malpractice claims grounded in negligence and subject to the standard of care applicable to such actions, regardless of the terms in which the claimant couches the claim. <u>Levinson</u>, <u>supra</u>, 320 <u>N.J. Super.</u> at 315.

Count 3 of the proposed Amended Complaint alleges breach of contract. The contract which Plaintiff asserts was breached was the retainer agreement. The claims contained within this Count are based on a deviation from the standard of care and, as such, should be treated as legal malpractice claims. Therefore, a breach of contract claim is utterly futile and the Motion to Amend should be denied.

### F. Plaintiff Is Not Legally Entitled To Emotional Distress Damages In a Legal Malpractice Matter

Plaintiff is not entitled to recover compensatory damages for emotional distress in this legal malpractice action. Plaintiff's Complaint alleges legal malpractice arising out of Friedman's representation of Demodulation in patent litigation. While Friedman disputes all allegations of liability in this matter, it is clear that Plaintiff cannot maintain any claim for damages resulting from alleged emotional distress in this legal malpractice action.

Unlike the pecuniary patent litigation, emotional distress damages are only permitted in legal malpractice cases where the attorney had been retained to pursue purely non-economic interests. Gautam v. De Luca, 215 N.J. Super. 388 (App. Div. 1987). Even if the purpose of the retention was purely noneconomic, which this case was not, emotional distress damages must not be awarded in legal malpractice cases in the absence of egregious or extraordinary circumstances. Id..

Damages in cases involving legal malpractice are "limited to recompensing the

injured party for his economic loss." Id. at 399.

New Jersey's Appellate Division further explained as follows:

> As a practical matter, there must be some convenient
> clamp or restriction placed upon a tortfeasor's otherwise
> boundless liability. The courts cannot serve as the answer
> for all of life's shortcomings and disappointments.
> Aggravation, annoyance and frustration, however real
> and justified, constitute unfortunate products of daily
> living. Damages for idiosyncratic psychiatric reactions
> should not be permitted. Judicial lines must be drawn.
> Dean Prosser puts it well:
>
> As a practical matter, legal responsibility must be limited
> to those causes which are so closely connected with the
> result and of such significance that the law is justified in
> imposing liability. Some boundary must be set to liability
> for the consequence of any act, upon the basis of some
> social idea of justice or policy. This limitation is
> sometimes, although rather infrequently, one of the fact
> of causation. More often it is purely one of policy, of our
> more or less inadequately expressed ideas of what justice
> demands, or of administrative possibility and
> convenience, none of which have any connection with
> questions of causation at all. Prosser, Torts § 41 at 236-
> 237 (4ed. 1971).
>
> Within that conceptual framework, we are fully convinced
> that there was no warrant for the award of emotional
> distress damages under the facts of this case. We
> emphasize that the relationship between the parties was
> predicated upon economic interest. The loss, if one
> occurred, was purely pecuniary.

Id at 399-400.

In the instant case, like in <u>Gautam</u>, "the relationship between the parties was predicated upon economic interest. The loss, if one occurred, was purely pecuniary" and there are no "egregious or extraordinary circumstances." Demodulation retained Friedman to protect its pecuniary interests with respect to its patents. Plaintiff merely agreed to be responsible for those legal fees. Therefore, damages, if any, are limited to "recompensing the injured party for [her] economic loss." As such, amending the Complaint to add a claim for intentional infliction of emotional distress is futile as Plaintiff can never recover on such a claim.

### G. Plaintiff Fails To Identify Any Defamatory Conduct Taken By Friedman

Plaintiff has failed to identify a single defamatory comment in the entire proposed Amended Complaint. Without identifying a defamatory comment attributed to Friedman which caused damage to Plaintiff, he cannot meet his pleading requirements. This is not only relevant to the factual determination of whether any comments attributed to Friedman were, in fact, defamatory, but also as to the time frame for the statute of limitations. In both Illinois and New Jersey, the statute of limitations is one year on defamation claims. <u>See</u> N.J.S.A. 2A:14-3 (establishing that a claim for defamation must be brought within one year of the publication of the alleged libel); <u>see also</u> 735 I.L.C.S. 5/13-201.As such, the amendment is futile and the Motion to Amend must be denied.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court

deny Plaintiff's motion seeking leave to file an Amended Complaint.

**MORGAN MELHUISH ABRUTYN**


By:_____**/s/ Elliott Abrutyn**_____
651 Old Mount Pleasant Avenue, Suite 200
Livingston, New Jersey 07039
(973) 994-2500
Attorneys for Defendants
eabrutyn@morganlawfirm.com

Dated:  March 17, 2017