# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| |  |
|---|---|
| JAMES O'KEEFE and DEMODULATION, INC., | Civ. No. 16-cv-4866 (SDW) (LDW) |
| Plaintiffs, | **OPINION** |
| v. | **DENYING PLAINTIFFS' MOTION TO AMEND** |
| FRIEDMAN & FRIEDMAN, LTD., | |
| Defendant. | |

Before the Court is plaintiffs' motion for leave to amend the Complaint. ECF No. 38. Defendant opposes the motion. ECF No. 39. This motion is decided without oral argument, pursuant to Federal Rule of Civil Procedure 78. Having considered the parties' submissions, plaintiffs' motion to amend is **DENIED** for the reasons set forth below.

### I. BACKGROUND

This is a legal malpractice action in which plaintiffs allege defendant Friedman & Friedman, Ltd. ("Friedman & Friedman") and various other law firms failed to properly represent Demodulation, Inc. in three patent infringement actions. Plaintiffs commenced this action in the Superior Court of New Jersey, Bergen County, Law Division in March 2016. *See* ECF No. 1-1. Defendant removed the action to this Court on grounds of diversity of citizenship jurisdiction, 28 U.S.C. § 1332, in August 2016. *See* ECF No. 1. Plaintiff James O'Keefe is a citizen of New Jersey and plaintiff Demodulation is a Delaware corporation with its principal place of business in New Jersey. ECF No. 1-1 ¶¶ 1-2. Defendant Friedman & Friedman is an Illinois corporation whose principal place of business is in Chicago, Illinois. ECF No. 1 ¶ 16. The amount in controversy exceeds the $75,000 jurisdictional threshold.

Shortly after defendant removed the action to this Court, then-counsel for plaintiffs filed a motion to withdraw, ECF No. 4, and defendant filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, ECF No. 5. The Court granted the motion to withdraw and defendant's motion to dismiss was administratively terminated to permit plaintiffs time to secure new counsel. ECF Nos. 12, 13. Acting *pro se*, plaintiff O'Keefe filed a motion for leave to amend the complaint on March 6, 2017.[1] ECF No. 25. Joshua Thomas, Esq. filed a notice of appearance on behalf of plaintiffs on July 12, 2017, and plaintiff's *pro se* motion to amend was withdrawn without prejudice. ECF No. 31. The Court held an in-person settlement conference with the parties on September 29, 2017, after which the Court granted plaintiffs leave to file the instant motion by November 9, 2017, which was timely filed. ECF Nos. 37, 38. Defendant opposes the motion. ECF No. 39.

Plaintiffs seek to file an Amended Complaint that would add several defendants and claims to the current Complaint. Presently, the Complaint alleges that in September 2015, plaintiffs retained defendant Friedman & Friedman to represent Demodulation in a patent infringement matter, *Demodulation, Inc. v. United States*, Civ. No. 11-236, filed in the Court of Federal Claims. ECF No. 1-1 ¶¶ 5-6. The Complaint further alleges that due to defendant's failure to perform its duties, plaintiffs terminated the agreement two months later on November 16, 2015. *Id.* ¶ 10. Nevertheless, plaintiffs allege, the defendant billed plaintiffs approximately $270,000 for legal work done in connection with the litigation. *Id.* ¶ 11. The Complaint asserts a claim for legal malpractice and seeks a declaration of reasonable legal fees, a declaration that the fees billed by defendants are unreasonable, and the return of plaintiffs' files. *Id.* at 3-7.

---

[1] Plaintiff filed this motion only on his own behalf, as a corporation must be represented by an attorney. *See Dougherty v. Snyder*, 621 F. App'x 715, 717 (3d Cir. 2015).

The Proposed Amended Complaint ("PAC") includes the foregoing allegations, as well as entirely new factual allegations and claims against additional defendants. The allegations, although difficult to discern, seem essentially to aver that defendant Friedman & Friedman and the proposed defendants conspired to defraud plaintiffs. *See* PAC, ECF No. 38. The PAC alleges that in November 2010, proposed defendant Benjamin Light, Esq. served as lead counsel for Demodulation and that his firm, Armando & Light, merged into the Callagy Law Firm. *Id.* ¶¶ 1-3. According to the PAC, the Callagy Law Firm filed three lawsuits on behalf of Demodulation in the Superior Court of New Jersey, the District of New Jersey, and the Court of Federal Claims, for which the firm received significant funds from a New-Jersey based company, Law Funder, and a large amount of documentation and evidence from Demodulation. *Id.* ¶¶ 7-11. The PAC avers that although Mr. Light believed in the merits of the lawsuits, Mr. Callagy did not and conspired to curtail their success by, *inter alia*, failing to retain the necessary resources and experts, tampering with Mr. Light's pleadings, and unilaterally dismissing one action. *Id.* ¶¶ 12-17, 20. The PAC does not provide any explanation of the three alleged underlying lawsuits, and therefore it is entirely unclear to which suits the PAC is referring, and the way in which this alleged behavior affected the suits.

The PAC goes on to allege that Mr. Light and Mr. Callagy had an employment dispute that negatively affected Demodulation's lawsuits. *Id.* ¶¶ 19-28. The PAC states that after the dispute was resolved, plaintiffs' lawsuits were assigned to a junior attorney at the Callagy Firm, Mr. Saltman, who was incapable of handling the actions. *Id.* ¶¶ 29-31. The PAC states Mr. Light, then, attempted to "scuttle Demodulation's lawsuits" by engaging in unauthorized "back-door" settlement discussions with a defendant in one of the actions and intensely pressured

3

plaintiffs to settle. *Id.* ¶¶ 32-35. The PAC then appears to allege that the firm's failure to properly represent Demodulation in an unidentified lawsuit, which allegedly included filing a pleading after the statute of limitations had passed, a "dump" of discovery upon opposing counsel, and improperly giving experts confidential information, resulted in multiple Court imposed sanctions against the company. *Id.* ¶¶ 37-39, 44-45. The PAC further avers that the Callagy Firm lost a number of critical documents relating to the actions. *Id.* ¶¶ 41-43.

The PAC then seems to turn its allegations against the proposed defendants from negligent to intentionally tortious conduct. Plaintiffs allege that Mr. Light and Mr. Smikun, whose involvement is not explained and who is not named as a proposed defendant in this matter, "wrote two extortion letters" demanding that Mr. O'Keefe perjure himself, in a manner unexplained by the PAC, regarding their representation of Demodulation in the patent actions. *Id.* ¶¶ 46-51. The PAC alleges this was done in order to "mitigate against any possible malpractice suit . . . by Demodulation." *Id.* ¶ 50.

The PAC then claims that Mr. Callagy, Mr. Light, Mr. Smikun, and Mr. McKenna,[2] conspired and "crafted a scheme for their own pecuniary gain," *id.* ¶¶ 55-56, and that "an enterprise consisting of four law firms, a . . . funding company, and a total of twelve individuals" was formed "for the purpose of running a money laundering scheme to divert 'contingency' funds intended for three lawsuits filed by Demodulation Inc., to other purposes and to facilitate fraudulent actions." *Id.* ¶ 94. Although the underlying facts comprising this scheme are unclear, the PAC avers that the scheme included the following: the Callagy Firm obtained a $3,000,00 malpractice insurance policy, *id.* ¶ 58; Mr. Light gave his old friend, Mr. McKenna, $200,000 to

---

[2] As explained below, McKenna became Demodulation's counsel after Mr. Light.

4

take on Demodulation as a client "in return for protecting The Calagy [sic] Defendants from exposure for their actions," *id.* ¶¶ 60-62; and the alleged conspirators would "obtain an additional $269,441.25 kickback comprised of lawyer fees claimed by Friedman [&] Friedman, Ltd.," *id.* ¶ 57.

The PAC appears to imply that plaintiffs were not informed of the purported relationship between the law firms. *Id.* ¶ 66. Further, without elaboration, the PAC alleges that Mr. O'Keefe was forced to sign two contracts: one releasing the Callagy attorneys from liability, *id.* ¶ 67, and another retaining Friedman & Friedman, the originally named defendant, under which O'Keefe agreed to be held personally responsible for the legal fees of Demodulation, *id.* ¶¶ 110, 113. As alleged in the original Complaint, the PAC avers that Friedman & Friedman's representation of Demodulation quickly deteriorated. The PAC adds that as a result, a judgment in favor of Friedman & Friedman of $269.411.25 was entered against Mr. O'Keefe in Illinois. *Id.* ¶ 91. Additionally, the PAC alleges that this judgment was issued as a result of Mr. McKenna's failure adequately to represent plaintiffs. *Id.* ¶¶ 89-90.

Based on the foregoing allegations, plaintiffs seek leave to implead multiple defendants, including thirteen law firms and eight attorneys,[3] and to assert additional claims for fraud, wire fraud, a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), legal malpractice, and breach of contract. Plaintiffs assert this Court would have federal question jurisdiction over the proposed amended action pursuant to 28 U.S.C. § 1331.

---

[3] The proposed defendants are: Gail Friedman; Eugene Friedman; Keith A. McKenna; McKenna, LLC; McKenna Law, LLC; McKenna McIlwain, LLP; McKenna McIlwain, LLC; Keith A. McKenna & Associates, LLC; Keith A. McKenna & Associates, PC; Benjamin D. Light; David J. Aromando; Aromando & Light, LLC; Aromando, Light & Croft; Sean R. Callagy; Callagy Law, PC; Callagy Law, LLC; Andrew Rubin; Andrew Rubin, P.C.; David Rubin; David B. Rubin, PC; Lum, Drasco & Positan, LLC; and John Does 1-5.

5

## II. DISCUSSION

Defendant Friedman & Friedman argues the Court should deny plaintiffs' motion to amend because the new claims against the additional defendants in its proposed Amended Complaint are futile.[4] *See* Defendant's Opposition, ECF No. 39. For the reasons set forth below, the Court denies plaintiffs' motion to amend the Complaint.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts grant leave to amend liberally in light of "the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The United States Supreme Court holds that leave to amend under Rule 15 may be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. *Id.* "The burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted." *Luppino v. Mercedes-Benz USA, LLC*, Civ. No. 09-5582 (DMC) (JAD), 2012 WL 850743, at *2 (D.N.J. Mar. 8, 2012).

---

[4] Defendant also argues the motion should be denied because it does not comply with Local Rule of Civil Procedure 15.1. Although defendant is correct that the motion is procedurally deficient, the Court will nevertheless address the merits of the motion in the interest of judicial economy. Defendant further opposes the motion on the grounds that this Court does not have personal jurisdiction over Friedman & Friedman, plaintiffs do not have standing, and the claims are barred by *res judicata*. These arguments, however, appear to refer to the claim for legal malpractice, asserted in the original Complaint. As the question before this Court is whether the filing of the PAC is permitted under Fed. R. Civ. P. 15, the Court will not consider these potential bases for dismissal now. *See Danise v. Saxon Mortg. Servs., Inc.*, Civ. No. 15-6062 (JLL) (JAD), 2016 WL 4769733, at *8 (D.N.J. Sept. 12, 2016) (declining to review claims asserted in the plaintiff's original complaint on a motion for leave to amend). These arguments may be presented in a motion to dismiss, as addressed below in the Conclusion section.

6

### A. Undue Delay

The Court recognizes that this case has been pending since August 2016 and plaintiffs have yet to establish an operative pleading, despite the eighteen months that have passed since the matter was removed to this Court, and the more than two years since the underlying events occurred. A long delay resulted from plaintiffs not having counsel. Once plaintiffs finally appeared by counsel, the Court held an in-person settlement conference on September 29, 2017, after which the Court granted plaintiffs leave to file the instant motion by November 9, 2017 in an attempt to finally settle the pleadings. ECF Nos. 37. For purposes of the instant motion, plaintiffs filed their motion within the deadline the Court imposed, and therefore the Court finds no undue delay in the present request for leave to amend. *See, e.g., AstraZeneca AB v. Perrigo Co. PLC*, Civ. No. 15-1057 (MLC) (TJB), 2015 WL 8483298, at *4 (D.N.J. Dec. 8, 2015) ("The Court would find it difficult to hold that a motion filed within the deadline set by the Court and known to the parties was the product of undue delay."). Any additional motions for leave to amend based on the same events alleged in the PAC, however, will likely be viewed as an unduly delayed attempt to amend. The Court has given more than ample time for plaintiffs to prepare a viable pleading.

### B. Bad Faith

Defendant points to no evidence that indicates plaintiffs acted in bad faith in seeking to amend the Complaint, and the Court finds none. *See Diallo v. ALO Enters. Corp.*, Civ. No. 12-3762 (AET), 2013 U.S. Dist. LEXIS 99681, at *7 (D.N.J. July 17, 2013) ("[T]here generally must . . . be some extrinsic evidence to indicate that a litigant acted in bad faith before a motion to amend will be denied on this ground.") (citations omitted)).

7

## C. Undue Prejudice

The type of prejudice cognizable under Rule 15 is that which impairs the non-movant party's ability to present its case. *Dente v. Saxon Mortgage*, Civ. No. 11-6933 (AET), 2012 WL 1664127, at *2 (D.N.J. May 11, 2012). Here, defendant's ability to present its case would not be impaired by allowing plaintiffs to amend the Complaint if such amendments were otherwise appropriate.

## D. Futility

A proposed amended claim is futile if it would fail to state a cause of action upon which relief could be granted, in accordance with "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is defendant's burden to demonstrate the proposed amendments' futility. *See Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000).

### 1. Proposed Defendants

Plaintiffs seek leave to implead thirteen law firms and eight attorneys as defendants. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must give "give

8

the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Here, however, the PAC does not assert *any* factual allegations against the following defendants, and therefore they have not been put on notice of the claims asserted against them, as required by Rule 8: Gail Friedman; Andrew Rubin; Andrew Rubin, P.C.; David Rubin; David B. Rubin, PC; and Lum Drasco & Positan, LLC. Accordingly, plaintiffs' motion for leave to amend is denied as to these defendants for failure to plead a non-futile claim against them in accordance with Rule 8.

### 2. Fraud and Wire Fraud

Plaintiffs seek leave to assert causes of action for fraud and wire fraud. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purpose of the heightened pleading requirement is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).

"To state a claim for common law fraud under New Jersey law, a plaintiff must allege '(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Delaware Valley Bindery Inc. v. Ramshaw*, No. 17-0422 (BRM) (TJB), 2017 WL

9

4119597, at *7 (D.N.J. Sept. 18, 2017) (citing *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237, 246 (App. Div. 2007)).

To state a claim for wire fraud, a plaintiff must allege "(1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003); 18 U.S.C. § 1343. In the context of a RICO claim, "it is the scheme that must be fraudulent, not necessarily the particular . . . wire transmissions that constitute the offenses." *Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010).

The PAC appears to allege that the proposed defendants committed fraud because they failed to disclose the purported relationship among the law firms prior to plaintiffs' retaining the various firms. Even viewed in the light most favorable to plaintiffs, the non-moving parties, the Court cannot discern even the basics of a viable claim sounding in fraud under the notice pleading standard of Rule 8, much less the more stringent Rule 9 standard. Plaintiffs fail to plead even conclusory statements of the bare elements comprising fraud and wire fraud and moreover do not plead the basic factual context that would support those claims as required by Rule 8. *See Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Further, it is unclear from the factual allegations in the PAC what exactly the fraudulent scheme consisted of, what role each alleged co-conspirator played, when the scheme took place, and the resulting effect it had on plaintiffs. In other words, the PAC does not sufficiently assert the who, what, when, and where details of the alleged fraud such that the fraud charges against the proposed defendants are pleaded with the particularity required by Rule 9. *Bonavitacola Elec.*, 87 F.

10

App'x at 231. Accordingly, plaintiffs' motion to amend is denied as futile with respect to the proposed claims for fraud and wire fraud.

### 3. RICO

To state a RICO claim, plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kolar*, 361 F. App'x at 362 (citing *Sedima. S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A pattern of racketeering activity requires at least two predicate acts of racketeering activity, which may include acts of wire fraud. *Id.*; 18 U.S.C. § 1961. In order to state a RICO claim, plaintiffs must sufficiently state the claims comprising the enterprise's predicate acts, in this case wire fraud. As the PAC fails to state a non-futile claim for wire fraud, it also does not state the elements of a RICO claim. Therefore, plaintiffs' motion for leave to amend the complaint is denied as to the RICO claim because the claim as pleaded is futile.

### 4. Legal Malpractice and Breach of Contract

The original Complaint asserts a claim for legal malpractice against Friedman & Friedman, and plaintiffs now seek leave to add a legal malpractice claim against all additional proposed defendants. As explained above, the Court previously denied plaintiffs leave to implead a number of proposed defendants based on the absence of any factual allegations against them in the PAC. The remaining defendants are: Eugene Friedman; Keith A. McKenna; McKenna Law, LLC; McKenna McIlwain, LLP; McKenna, McIlwain, LLC; Keith A. McKenna & Associates, LLC; Keith A. McKenna & Associates, PC ("McKenna Defendants"); Benjamin D. Light; David J. Aromando; Armando & Light, LLC; Aromando, Light & Croft ("Armando &

Light Defendants"); Sean R. Callagy; Callagy Law, PC; and Callagy Law, LLC ("Callagy Defendants").[5]

To establish a claim for legal malpractice, plaintiffs must assert: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; (3) proximate causation; and (4) damages. *McGrogan v. Till*, 167 N.J. 414, 425 (2001). To state a claim for breach of contract, plaintiffs must show: (1) the existence of a contract between the parties; (2) the party stating the claim performed its own contractual obligations; (3) defendant's breach of the contract; and (4) defendant's breach caused a loss to plaintiff. *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016).

Primarily, the Court notes these claims are futile because, as explained below, the PAC does not provide coherent factual allegations that would put the proposed defendants on notice of what they are alleged to have done that would constitute legal malpractice or breach of contract. While the Court is cognizant of plaintiffs' *pro se* status at one point in this action, the motion before the Court was submitted by plaintiffs' counsel and therefore does not require this Court to apply a more liberal construction of plaintiffs' pleadings, as with *pro se* litigants. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). As a preliminary matter, the Court notes that it is unclear what allegations the PAC intends to assert in regards to the legal malpractice and breach of contract claims, and therefore the PAC fails to give the proposed defendants fair notice of the allegations asserted against them as required by Rule 8.

---

[5] The Court notes that the PAC's grouping of defendants together by defining several proposed defendants as a single entity (i.e., defining "Callagy Defendants" as comprising Sean R. Callagy, Callagy Law, PC, and Callagy Law, LLC) and alleging conduct against the defined groups violates Rule 8 because it fails to provide notice to the parties of the particular claims against them. *See Sheeran v. Blyth Shipholding S.A.*, Civ. No. 14-5482 (JBS) (AMD), 2015 WL 9048979, at *4 (D.N.J. Dec. 16, 2015).

12

As to the breach of contract claim, the PAC fails to allege any particular obligation arising from a contract between the parties that was breached, or any resulting damages. Moreover, "in the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct," and the claims must be based on distinct conduct. *RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco*, 2009 U.S. Dist. LEXIS 73359, at *24-25 (D.N.J. Aug. 19, 2009). Where, as here, the two claims appear to be based on the same conduct, the PAC improperly pleads separate claims for breach of contract and legal malpractice. *See Lopez-Siguenza v. Roddy*, Civ. No. 13-2005 (JBS) (JS), 2014 WL 4854452, at *7 (D.N.J. Sept. 30, 2014) ("To permit a generalized claim for breach of contract to proceed, when the breach is apparently based solely upon the attorney's malpractice, would . . . be duplicative of the malpractice claim."). Accordingly, the motion is denied as to the proposed breach of contract claim.

As to legal malpractice, the court infers that plaintiffs may be basing this claim on any one of three sets of alleged facts. First, the PAC appears to attempt to plead that Mr. McKenna's negligence with respect to the Illinois lawsuit filed by Friedman & Friedman resulted in the judgment that was entered against plaintiffs. It is unclear, however, what Mr. McKenna did or did not do that constituted malpractice and damaged plaintiffs. The PAC alleges, "Mr. McKenna intentionally did not inform the Plaintiffs of the procedural process in Illinois for resolving the legal billing disputes," that "Mr. McKenna intentionally allowed a billing dispute hearing to be convened . . . without the Plaintiff's knowledge or understanding," and "[a] judgment against the Plaintiffs . . . was reached in abstensia [sic] without the Plaintiff's knowledge or involvement." PAC ¶¶ 87-90. Yet, the PAC does not explain even the fundamentals of what purported

13

negligence of Mr. McKenna caused the judgment to be entered against plaintiffs. Indeed, it is not even pleaded that Mr. McKenna represented plaintiffs in that action.

Next, the PAC appears to allege that Demodulation was subjected to sanctions in its patent lawsuits as a result of the proposed defendants' allegedly unethical representation. Specifically, the PAC avers that Mr. Light filed an action after the statute of limitations had passed, the Federal Court of Claims precluded additional discovery regarding a trade secrets claim due to an intentional "dump" of discovery on the opposing counsel, the Callagy defendants lost critical documents and refused to take depositions, and Mr. Saltman (not named in the PAC as a proposed defendant) improperly gave confidential information to an expert, which resulted in a judge dismissing a trade secrets claim on unspecified grounds.

While the Court acknowledges the potential seriousness of these allegations, a legal malpractice claim is not well-pleaded in the PAC. The PAC does not provide any details regarding the substance of the underlying patent actions and does not sufficiently explain what damages plaintiffs actually suffered as a result of the proposed defendants' actions, such as the value of the claims alleged to have been lost. Further, the PAC fails sufficiently to plead that defendants' actions were the proximate cause of the injury plaintiffs suffered. The New Jersey Supreme Court explained that the "first and most basic concept 'buried' within proximate cause is that of causation in fact." *Conklin v. Hannoch Weisman*, 145 N.J. 395, 417 (1996)). For example, "if a lawyer misses a statute of limitations and a complaint is dismissed for that reason, a plaintiff must still establish that had the action been timely filed it would have resulted in a favorable recovery." *Id.* Here, the PAC does not plead any facts even suggesting that Demodulation would have been successful on its claims if not for the defendants' alleged

14

actions. *See Okpor v. Legome*, Civ. No. 15-191 (JBS) (AMD), 2016 WL 1163931, at *2 (D.N.J. Mar. 24, 2016). In fact, plaintiffs do not plead any facts whatsoever regarding the merits of the underlying claims.

Finally, it appears plaintiffs attempt to assert a legal malpractice claim against Friedman & Friedman, Dr. Friedman[6] and Mr. McKenna for their "abandonment" with regards to a *Markman* brief that Dr. Friedman was supposed to have prepared. As stated above, the Court will not analyze the futility of a legal malpractice claim against Friedman & Friedman, as that claim was asserted in the original Complaint and is not before the Court on this motion to amend. *See Danise v. Saxon Mortg. Servs.*, Inc., Civ. No. 15-6062 (JLL) (JAD), 2016 WL 4769733, at *8 (D.N.J. Sept. 12, 2016) ("Any allegations included in Plaintiff's original complaint are not reviewable in the context of this motion [for leave to amend] . . . ."). The Court still must analyze, however, the legal malpractice claims asserted against Dr. Friedman and Mr. McKenna as asserted in the PAC. To the extent the PAC attempts to assert a legal malpractice claim against the new proposed defendants Dr. Friedman and Mr. McKenna, the Court cannot discern damages or causation to have been sufficiently pleaded, as explained above.

For the reasons stated above, plaintiffs' motion for leave to amend the Complaint is **DENIED**.

---

[6]Although not identified, based upon the PAC's use of male pronouns, the Court infers that Dr. Friedman refers to proposed defendant Eugene Friedman, an attorney of Friedman & Friedman.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the Complaint (ECF No. 38) is **DENIED** and the original Complaint shall be the operative pleading. Accordingly, defendant Friedman & Friedman is now granted leave to re-file its motion to dismiss that pleading. An appropriate Order accompanies this Opinion.

Dated: April 2, 2018

Leda Dunn Wettre
**United States Magistrate Judge**

Original: Clerk of the Court
cc: Hon. Susan D. Wigenton, U.S.D.J.
All Parties

actions. *See Okpor v. Legome*, Civ. No. 15-191 (JBS) (AMD), 2016 WL 1163931, at *2 (D.N.J. Mar. 24, 2016). In fact, plaintiffs do not plead any facts whatsoever regarding the merits of the underlying claims.

Finally, it appears plaintiffs attempt to assert a legal malpractice claim against Friedman & Friedman, Dr. Friedman[6] and Mr. McKenna for their "abandonment" with regards to a *Markman* brief that Dr. Friedman was supposed to have prepared. As stated above, the Court will not analyze the futility of a legal malpractice claim against Friedman & Friedman, as that claim was asserted in the original Complaint and is not before the Court on this motion to amend. *See Danise v. Saxon Mortg. Servs.*, Inc., Civ. No. 15-6062 (JLL) (JAD), 2016 WL 4769733, at *8 (D.N.J. Sept. 12, 2016) ("Any allegations included in Plaintiff's original complaint are not reviewable in the context of this motion [for leave to amend] . . . ."). The Court still must analyze, however, the legal malpractice claims asserted against Dr. Friedman and Mr. McKenna as asserted in the PAC. To the extent the PAC attempts to assert a legal malpractice claim against the new proposed defendants Dr. Friedman and Mr. McKenna, the Court cannot discern damages or causation to have been sufficiently pleaded, as explained above.

For the reasons stated above, plaintiffs' motion for leave to amend the Complaint is **DENIED**.

---

[6]Although not identified, based upon the PAC's use of male pronouns, the Court infers that Dr. Friedman refers to proposed defendant Eugene Friedman, an attorney of Friedman & Friedman.

15

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the Complaint (ECF No. 38) is **DENIED** and the original Complaint shall be the operative pleading. Accordingly, defendant Friedman & Friedman is now granted leave to re-file its motion to dismiss that pleading. An appropriate Order accompanies this Opinion.

Dated: March 29, 2018

*Leda Dunn Wettre*

**Leda Dunn Wettre**
**United States Magistrate Judge**

Original: Clerk of the Court
cc: Hon. Susan D. Wigenton, U.S.D.J.
All Parties